IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JUDY A. HAND, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-367-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.    STATEMENT OF THE CASE

Plaintiff Judy A. Hand brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Hand applied for disability insurance benefits on April 12, 2005, alleging disability commencing May 7, 2004. (Tr. 66). She met the insured status requirements at all times relevant to the administrative decision. (Tr. 55).

After the Social Security Administration denied her application for benefits both initially and

on reconsideration, Hand requested a hearing before an administrative law judge (the "ALJ"). ALJ James A. Wendland held a hearing on November 17, 2006, which Hand attended accompanied by a non-attorney representative. (Tr. 316). On January 26, 2007, the ALJ issued a decision that Hand was not disabled because she had the residual functional capacity to perform a modified range of sedentary work,[1] including her past relevant work as an accounting clerk. (Tr.17-24). The Appeals Council denied Hand's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 404.1567(a).

impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

   1.   Whether the ALJ complied with relevant legal standards in weighing the opinions of the state agency medical consultants; and

   2.   Whether the ALJ's assessment of Hand's mental residual functional capacity is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD[2]

Hand was born September 4, 1952. (Tr. 66). She graduated high school in 1970, then worked as a meat wrapper for twenty-five years and as an accounting clerk for approximately eight years. (Tr. 101, 118).

In 2003, Hand's primary care physician, John Gabriel, diagnosed Hand as suffering from depression and placed her on the antidepressant Wellbutrin. (Tr. 263). After she underwent back surgery in May 2004, Hand complained of feeling depressed because she was not working. (Tr. 193). She was prescribed the antidepressant Pamelor to address her complaints of increased difficulty sleeping. (Tr. 189). Hand continued to report depression and anxiety-related symptoms during her follow-up visits with Gabriel over the next eighteen months, and her prescription for Valium was refilled as necessary. (Tr. 250-257, 293-94). She also reported low back pain despite participating in a pain management program with Patrick Stanton, D.O., but her pain medication was beneficial. (Tr. 266-91, 301-10, 320-21, 328). Hand complained of severe pain and significant

---

[2] Because of worsening low back pain that did not respond to conservative treatment, Hand underwent surgery on her lumbar spine on May 11, 2004, with a complicated recovery; however, she does not challenge the Commissioner's decision with respect to her physical impairments or her exertional capacity for sedentary work. The summary of the administrative record will be confined to information relevant to Hand's complaint that her mental impairment was not properly evaluated.

family stress in July 2006. (Tr. 288). Stanton reported in October 2006 that Hand was very depressed about her finances and the health of her family, but was unable to afford counseling. (Tr. 301). Hand reported at the hearing that she taken Valium on a daily basis for a couple of years and recently had been prescribed a new antidepressant. (326).

Psychologist Lawrence Sloan, Ph.D., performed a consultative mental status evaluation on July 8, 2005. (Tr. 209-214). Hand complained of significant residual back pain despite surgery. Her medications included pain relievers and Xanax, which her family physician had prescribed for her "nerves." (Tr. 210). She reported that her problems with depression began in the early 1990s after she had seven arm surgeries to repair repetitive stress injuries related to her work as a meat packer. Her depression went into remission until her back problems began in 1999, and she described her mood as "tremendously worse" after surgery in 2004. She had suicidal thoughts after her surgery, but her depressed mood lessened in intensity as her recovery progressed. Hand remained depressed because of her inability to return to work or help around the house. Her symptoms included crying spells, strong feelings of hopelessness and helplessness, loss of interest in her appearance, social isolation, low energy, fatigue, anhedonia, and sleep disturbance. She was intermittently tearful during the interview, and Sloan assessed her mood as moderately depressed. (Tr. 212).

Hand's daily activities included preparing lunch for her husband, watching television, performing home exercises prescribed by her physician, unloading the dishwasher, doing laundry, feeding her dogs, dusting, and preparing simple meals. (Tr. 210). Hand resided with her husband, and described a close relationship with her mother and two adult daughters. Although Hand had several close friends, she avoided socializing. She also complained that chronic pain interfered with

her ability to complete tasks in a timely manner. (Tr. 211).

On evaluation, Hand's speech was clear and her behavior was within normal limits. Her thinking was logical, goal directed, and appropriate. (Tr. 212). Sloan found Hand's memory to be intact, her concentration was within normal limits, and she demonstrated good insight into her symptoms and their impact on her daily living. (Tr. 213). Sloan diagnosed Major Depressive Disorder, Recurrent, Moderate, which appeared to be secondary to Hand's chronic pain and poor sleep. Sloan assigned a current Global Assessment of Functioning ("GAF") score of 50,[3] and opined that Hand's prognosis was dependent on her medical diagnosis. (Tr. 213).

2. State Agency Medical Consultants

State agency psychologist Henry Hanna, Ph.D., reviewed Hand's history of mental impairment and opined that Hand had a major depressive disorder that caused mild restriction in her activities of daily living, mild restriction in social functioning, and moderate difficulties with persistence, but no episodes of decompensation. (Tr. 220-32). Hanna noted that Hand might be somewhat limited in sustaining a workweek secondary to depression-related symptoms. (Tr. 232).

Hanna also completed a mental residual functional capacity assessment. He found Hand was moderately limited in three areas: carrying out detailed instructions; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and responding

---

[3] A GAF score is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994)(DSM-IV). A GAF score of 41-50 reflects serious symptoms or any serious impairment in social, occupational or school functioning. DSM-IV at 34.

appropriately to changes in work setting. Hanna otherwise found no significant limitations in Hand's understanding and memory, sustained concentration and persistence, social interaction, and work adaptability. (Tr. 215-16). Hanna concluded that Hand was able to understand and follow detailed instructions, interact adequately with co-workers and supervisors, and adapt to routine work environments, (Tr. 217), and his assessment was affirmed on reconsideration. (Tr. 219, 234). The state agency medical consultants who considered Hand's physical impairments found her capable of a modified range of light work. (Tr. 239-47).

    3.    ALJ Determination

The ALJ found that Hand's depression and back problems were severe impairments, but did not meet or medically equal the criteria of any listed impairment. (Tr. 18). Instead, the ALJ found Hand was capable of performing a modified range of sedentary work over a sustained period of time with the additional condition that she not be required to understand, remember, and carry out more than detailed, non-complex instructions. (Tr. 18-19, 349). Based on vocational expert testimony elicited during the administrative hearing, the ALJ found Hand's residual functional capacity was compatible with the performance of her past relevant work as an accounting clerk. (Tr. 23). Accordingly, the ALJ concluded at Step Four of the sequential evaluation process that Hand was not disabled and was not entitled to disability insurance benefits. (Tr. 23-24).

E.    DISCUSSION

Hand contends that the ALJ did not comply with relevant legal standards for weighing medical opinions offered by state agency medical consultants and that this failure prejudiced her case. Specifically, Hand asserts that the ALJ did not address state agency psychologist Hanna's

opinion that Hand's mental impairment limits her ability to work on a sustained basis.

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from nonexamining sources) at the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. § 404.1527(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency consultants' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p. The opinions can be given weight only insofar as they are supported by evidence in the case record. *Id*.

The requirements of the regulations and Social Security Rulings are binding on the Administration. *See Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). If the agency violates its rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

In his written determination, the ALJ relied on the opinions of the state agency medical consultants to support his determination at Step Three that Hand had no listing-level impairment. (Tr. 18). With respect to Hand's residual functional capacity (RFC), the ALJ found Hand was capable of performing a restricted range of sedentary work over a sustained period of time. (Tr. 19). The ALJ noted that the state agency medical consultants considered Hand capable of performing a restricted range of light work, but he decided to give her the benefit of the doubt and limit her to

work at the sedentary level. (Tr. 22-23). The ALJ also explained that he was imposing mental limitations based less on Hand's depression and more on the reported side-effects of her medication. (Tr. 23). The ALJ did not explain the weight given to Hanna's opinions specifically, which does not comport with the Commissioner's regulations and rulings, but any deficiencies in the attention the ALJ gave to the state agency medical consultants must have prejudiced Hand to warrant relief.

Hand asserts that prejudice is apparent because the ALJ's assessment that she can work on a sustained basis is inconsistent with Hanna's opinion that Hand was moderately limited in her ability to sustain a normal workweek.[4] Hanna found moderate limitation in Hand's ability to complete a normal workday and workweek, but in his narrative assessment of Hand's functional capacity, Hanna concluded that Hand retained the ability to understand and follow detailed instructions, interact with co-workers and supervisors, and adapt to routine work environments.[5] (Tr. 217). *See generally* 20 C.F.R. § 404.1521(b) (identifying basic work-related activities expected in most jobs). Hanna's assessment of a moderate limitation in functioning is not, in and of itself, contrary to the ALJ's decision that Hand can perform a modified range of non-complex sedentary work on a sustained basis.

---

[4] Hand suggests that Hanna's finding of a moderate limitation is the equivalent of an inability to sustain a normal workweek in any occupation, but this argument is unpersuasive. (Plf. Br. at 15). The worksheet Hanna used identifies twenty mental activities to be rated as "not significantly limited," "moderately limited," and "markedly limited," but Hand's interpretation would make this last category superfluous. (Tr. 215-16)

[5] Hanna recorded the moderate limitation on an agency worksheet that reflects the consultant's preliminary conclusions about the effects of the impairment on the claimant's mental activities. The consultant is then required to prepare a narrative statement that constitutes the formal mental RFC assessment and explains the conclusions indicated on the worksheet in terms of the extent to which these mental capacities or functions could or could not be performed in work setting. SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM, DI 24510.060-.061 (1999). The agency manual provides that the narrative should not include severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations because the terms do not describe function and do not usefully convey the extent of limitation. *See id.* at DI 24510.065.

Even if the ALJ should have addressed Hanna's subordinate findings individually, this error does not undermine the ALJ's determination at Step Four to the degree necessary to overturn the Commissioner's decision under substantial evidence review. *See Hammond v. Barnhart*, 124 Fed. App'x 847, 851 (5th Cir. 2005). As the ALJ reasoned, Hand's depression has been situational and she has not sought mental health treatment. (Tr. 20). Based on the minimal findings of the consultative mental status evaluation and Hand's own statements, the ALJ found that Hand's mental impairment caused no restriction in her daily activities; mild restriction in social functioning; mild limitation in her ability to focus attention and concentration for sufficient periods to complete common work-related tasks; and no episodes of decompensation. (Tr. 20-21). In addition, the ALJ noted that Hand reported a wide range of daily activities despite her combination of impairments, including her mental impairment, and he also questioned her credibility because she had made inconsistent statements and reported filing for disability benefits in order to keep her private insurance. (Tr. 22). Although Hand complains that the record contains no other expert opinion addressing the functional limitations caused by her depression, the absence of such a report is not determinative because a claimant's residual functional capacity is for the Commissioner to determine. 20 C.F.R. § 404.1527(e)(2).

Residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p. *See also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A finding that a claimant can perform substantial gainful activity requires a determination that the claimant can both find work and, taking account of the claimant's exertional and non-exertional

limitations, maintain employment. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002)(citing *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir.1988)). *See also Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). The ALJ made such a determination in Hand's case. Although Hand suggests that the ALJ found her "wholly unimpaired" in her ability to perform a normal workweek, the ALJ's decision reflects that he considered her capable of sustained performance of a limited range of sedentary work crafted to accommodate her physical and mental impairments. The vocational expert testified that this limited range of work activity was compatible with Hand's previous work as generally performed in the national economy. (Tr. 350).

The ALJ erred by failing to explain the weight given to Hanna's opinions, but this error does not undermine the existence of substantial evidence to support the Commissioner's decision.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until July 23, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed

FINDINGS, CONCLUSIONS AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE–PAGE 11

findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until July 23, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JULY 1, 2008.

   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE